Our next case is 22-1099, 1Subsea v. FMC. Mr. Vincent, please proceed. May it please the Court. Exceptional cases. Did you prepare the joint appendix in this case? Excuse me, Your Honor? Did you prepare the joint appendix in this case? Yes, Your Honor. The parts of it, they're illegible. Which parts are you referring to? Well, I looked for the lower court's decision, and it's, you can't read it. I had to print it out from the paster. I was not aware of that. Do you have the appendix page that you're referring to? It could be an error. I don't have it here right now. Why don't you go ahead. So, exceptional case is simply one that stands out from the others. And what could be more exceptional than ignoring a clear court directive and a dispositive claim construction? Could you speak up a little bit, please? What could be more exceptional than ignoring a clear court directive and a dispositive claim construction to drive up your competitor's fees for years? This was a simple case in terms of it being decided on claim construction. And therefore, this Court's decision in Martec should have directed the outcome that this was an exceptional case because of the strong parallels to the facts at Martec and at the case at hand. The fact that the successor judge below did not substantively consider Martec, in his opinion, shows that it was an abuse of his discretion to find against FMC. The judge below did cite Martec twice, but never delved into the facts of the case or compare them substantively to the facts at hand here. Had he done so, it would have led to the inescapable conclusion that this, too, was an exceptional case, just as in Martec. Martec involved a claim construction that was dispositive, to which the patentee ducked and ignored it and proceeded to litigate and submit a very flawed expert report, which was excluded and then fees were awarded. So, too, here. OSS here ignored the dispositive claim construction. I've read the expert report. I don't see that his argument is frivolous. And, by the way, the illegible parts include 10647, which is the summary judgment decision in the lower court, which is pretty important here. You can't read it. I will get that corrected. I apologize, Your Honor. That was not apparent in our review. The fact that the expert's opinion was so flawed that it was excluded is support for our- Just so you know, it looks like it's like an ASCII. Like, do you see the giant blocks? Do you see how you can't even read words? I do see that. And that's throughout the entire appendix. There's stuff like that. 10647. You see it's not illegible? It's not that it's illegible, like it's blurry. It's not words. It's like you decided to write it in Mesopotamia symbols instead of words. I apologize. I have that page here, and I can see it, but we've been working off the electronic copy and apparently didn't do a thorough review of the printed copy that was forwarded to the court. So I apologize profusely, and we can't correct that because those are substantive proportions that need to be reviewed. But to- The expert said it's a different structure. It's retrievable. That doesn't seem to me to be necessarily outside the district court's claim construction. It was frivolous because it conflicts with the judge's directive in her claim construction order and at the Markman hearing that an elbow, for example, or a twist and turn in a flow path would not constitute- Well, that wasn't his argument. The argument was that it's a different flow path. It's a different structure. His argument was correct that because it was retrievable, it was a different flow path. Well, a different structure also. A different structure. It was retrievable. The fact that he- Why is that frivolous? He used that to strike an artificial dividing line between a purported first and second flow path and therefore concluded that because of that retrievability, that supposed line drawing that he was able to do, that there was a diverter. But when you trace the flow path, the path that the flow takes, there's only one conclusion that it can only go in one direction. When you take off the retrievable structure that he was referencing as the purported second flow path, the device is inoperable. So a different structure question was not addressed in the claim construction, right? The claim construction addressed a current to a different- No, answer my question. The different structure issue was not addressed at claim construction. I don't recall that the different structure issue came up, but I don't think it's different than the issues that were decided, in that when you have turns in a flow path that you can't get a diverter out of that. If you take a single flow path that snakes around, just because it turns around, just because it's directed a different way, which is what OSS- That's not what the expert said. The expert used the retrievable nature of the retrievable flow module to say that he saw that as a separate flow path. But just because you have an ipsa dicsa opinion about whether or not there's a second flow path doesn't necessarily mean that a diverter will manifest where one cannot exist under the court's construction. But this issue was litigated heavily in the Markman- He relied on your own documents in reaching his conclusion. Excuse me, Your Honor? That showed that your own documents viewed this as a separate system, right? It's a separate system. That's indisputable. It is separate. It is retrievable. It is a retrievable flow module. That's not the issue at hand. The point is, just because it's retrievable doesn't mean that there has to be a diversion. A diversion has a meaning that you have to go from a current flow path to a different flow path. There is only one flow path that can go through this device when the retrievable flow module is connected. And this was discussed at Markman. And FMC accurately predicted at the time that OSS would make these moves and have its expert make this opinion. He didn't make that opinion. He never said that. He said it's a different structure and it's retrievable. He said that it's different. He said that it's retrievable. That is, again, indisputed. It's a separate system. It's relying on your own documents. I don't understand why that's frivolous. It's not an issue that was addressed at Markman. It wasn't addressed by the judge until some time. Not even then, really, because she refused to consider the expert opinion. She refused to consider it because it conflicted with her constructions. That's what she said, but maybe she was wrong. I would submit that Judge Atlas would be the person who was best familiar with what she meant by her constructions. Didn't Judge Atlas say, at the point in time when you think the case should have been totally over and everything after that is frivolous, she said, I can't decide in your favor? Yes, Your Honor. When she said that, she said, at the point where you say it's all over, and because it's all over, everything is frivolous, the judge wrote down so a successor judge who might have to decide this issue would understand it, that she said it's not over. I'm saying that's the way I look at it, and so I say to myself, if we're talking about somebody being frivolous here, who's making the frivolous argument? How could it be frivolous to proceed with a case when a district court says, the party who's saying it's all over and you should win, you got told it wasn't? If you look at the sequence of events here... And so that was why I didn't spend as much time worrying about Martek as you said, because that circumstance didn't exist in Martek. We didn't have a district court saying, sit down, be calm, I know you think you should win, but you have to wait longer. Adependence. And because you had to wait longer, you should get feet, right? Yes, Your Honor. Because there was a long period of time, right? And you had to wait while you were over at the patent office. At Appendix 65... But she did get to it and decided. She never said it was frivolous, right? The summary judgment motion that FMC submitted in 2016... No, you're not answering my question. She never said it was frivolous, right? She did not say it was frivolous in her order, but the arguments that FMC submitted in 2016 were the same arguments that it submitted in 2020. So the fact that the same motion was submitted essentially twice in substance and it prevailed the second time and it was not ruled on the first time does not mean that FMC's arguments in the first instance would not have been granted had she considered it substantively. At Appendix 6584, Judge Atlas provides many reasons why she did not take up the motion at that time, including that it wasn't fully briefed. FMC didn't have the benefit of a reply. She was waiting on the patent office to potentially offer guidance that could simplify the case. She said the litigation is likely to be simplified through this IPR process. And again, the court had not issued a full claim construction at that time. FMC thought that it was right to move for non-infringement at that time and it was vindicated later because the same arguments later when they were represented in 2020 were upheld. So at Appendix 2802, the first MSJ, FMC makes its core argument that twists and turns are not a diverter. That's repeated at Appendix 7000. And again, at Appendix 2793, FMC cites the Markman quote that really is the key quote in this case where Judge Atlas said, don't do this. And OSS proceeded too. At Appendix 6991, we make the same argument. So it's the same motion both times. She didn't pick it up in the first instance for other non-substantive reasons, as she explains in her order. And unfortunately, Judge Bennett's reliance on that statement was to a heightened degree such that I believe he misinterpreted what was possibly the motivation behind not granting the first MSJ. But again, the fact that the second MSJ, the nearly identical MSJ substantively to the first one, was granted shows that FMC's arguments were meritorious in 2016 and were right for a finding of non-infringement. But it doesn't show the other side's arguments were correct. The frivolity of their arguments is demonstrated by the fact that at the end of the case, they had no evidence of infringement on this divert term. The only evidence- You sound as though you're saying the frivolousness is evidenced by the fact they lost. That can't be evidence of frivolousness. No, Your Honor. One of the prongs under Octane is objective baselessness. And what is objective baselessness if they don't have any basis for their case? At the end of years of litigation, all they had was an expert report drawing a line saying that this is a flow path, this is a second flow path, because he says so in an untestable way that violates- That's not true. That's not an accurate statement. That is not what he said. He said it's a separate flow path because it's a different structure, it's a different system, and it's retrievable. But to Judge Atlas' point, that's an untestable theory. It's not admissible. And because that expert report was not able to get into the case, the OSS was left with no evidence. They had no evidence of infringement. There was no alternative evidence that they could go forward on. And so if they're left with no evidence of infringement, it's ultimately baseless at that point. Otherwise, that prong of Octane really doesn't do any work here. This is the case where if you're left with nothing and you're left with an excluded expert report that violates the construction that the court gave, it violates the instruction that the court gave at Markman, we- Do you want to save any rebuttal time? Yes, Your Honor. We submit that that is more than sufficient evidence for showing abuse of discretion. Mr. Burgess. Good morning, Chief Judge Moore. May it please the Court. Bill Burgess on behalf of 1C. Whether a case is exceptional under 285 is a discretionary question that Congress entrusted to district courts in the first instance. Under Highmark and Octane, the question for this court is whether Judge Bennett abused his discretion by not finding that this case stood out from others. The answer has to be no. This was an ordinary patent case between two competitors. One side won, one side lost, and the result ultimately turned on the meaning of the district court's claim construction. My opposing counsel points out that we had no evidence at the end of the case. That is because the same order that granted summary judgment also struck our expert. It's not as if we tried to proceed afterward. And it's not even true that we had no evidence. We had their documents. We had their admissions and deposition. The 702 ruling struck the key part of our case and also disposed of the case on the merits. One side won, one side lost. It's not as if we tried to keep going after that. Judge Bennett's order, which is what this court is reviewing, applies Octane. It goes point by point through each of FMC's arguments and explains why this case was not exceptional. FMC can't show that was an abuse of discretion. You've heard a little bit about the standard of review. I think it's clear enough in our briefs that the abuse of discretion standard is about trial and appellate roles in the judicial system. It's not about individual cases or individual judges or when the trial judge received the case. The circuits are pretty clear about this. Our infringement position, the core of their argument is their accusation that we argued twists and turns after Judge Atlas told us not to. I want to be really clear about this. Our position was never about twists and turns. The questions brought this out somewhat. It was about modules, interchangeable modules in FMC's device. You can see them all at Appendix 74. But you argued that after the judge told you not to, the judge decided it didn't make the case exceptional. Right, exactly. I don't know that you need to go through the merits of whether you did or didn't. I totally agree. The question is not who was right about infringement. It's not even what this court thinks of that argument. In fact, didn't you offer evidence of infringement, some of which was just not admissible? Right. It's not like this is a Rule 11 where you had no evidence. You, unfortunately, had inadmissible evidence. Exactly. Yes. I mean, it's not the case that every party on the wrong side of a claim construction argument or on the wrong side of an evidentiary dispute is also on the wrong side of an exceptional case. I mean, this was an extremely ordinary patent case where one side won, one side lost, and the side that won is going after fees. Why don't you, for just a second, we didn't really get into it much, but just to address the standard of review question. Sure. It's about trial and appellate rules in the judicial system, and I think Anderson and Highmark are quite clear about this. I think the Supreme Court Sarnaev case recently said, we really mean this. I think the Sarnaev case said there isn't an exception for famous cases with a lot of media exposure. Abusive discretion is about certain calls that are entrusted to district courts in the first instance, and deference is the hallmark of abusive discretion. We cited a bunch of cases in our red brief that I don't think FMCs really responded to where other parties have tried arguments just like FMCs, and the circuits have consistently rejected them, including citing Anderson. I mean, they do have a Fourth Circuit case and a Seventh Circuit case that they quote, but I think as our brief also explains, those circuits have distinguished those two cases and essentially limited them to their facts. The Henry A. Knott case, the Fourth Circuit addressed it. There are factual circumstances that can exist in a case that would suggest that you have a more rigorous standard of review. That's the Fourth and Seventh Circuits. I think that is the most you could possibly get out of those cases. They've held those cases to that in different facts. Couldn't you hypothetically have a case that had a whole mess of witnesses and the issue entirely turned on credibility of the witness and the trial judge made a credibility call and the credibility call itself was being questioned as whether it was appropriate or not? Yes, I think that's the focus. And then you have the trial judge who made the credibility call either passes away or leaves, and a few years later you have some other judge trying to decide whether those credibility calls were correct or not? Right, I mean, I think that is the most you can possibly get out of the Bancard and the Henry A. Knott cases is when there is something central to the case that turns on live witness credibility, and I think both of those cases involve trial on the merits, then one district judge reviewing a cold record, those cases rightly question whether there is deference. If you have a situation like that, how does the appellate court proceed? What is the standard? Is it de novo? In Henry A. Knott, I don't think it was a question of... I'm just asking you as a hypothetical, if you have a case that all turned on credibility of evidence, was this witness, did you correctly say this witness shouldn't have been believed? I think the Anderson case says it can't be all about credibility. It's not about the trial judge's superior ability to judge credibility, so I'd be reluctant to say that there even are these scenarios where you can withhold deference from district courts, but I suppose you can imagine a case where there's an important fact, there's a trial on the merits, and the key issue is live witness credibility, and you have to make a demeanor-based credibility finding. In that case, it would be difficult to defer to a purported demeanor-based credibility finding from someone who hadn't actually observed the demeanor. I'm getting pretty far into hypotheticals. I'm not sure how far that goes, especially in light of Anderson, especially in light of Highmark, and especially in light of the cases that we cite in our briefs. In this case, this isn't about live witness credibility or demeanor-based credibility findings. Highmark was quite clear that the abuse of discretion standard applies to all aspects of a district court's exceptional case determination. I think that's about as clear as the court could possibly be in Highmark, and I think that's the standard the court should apply here. Okay, anything further? I can talk about Marktech if you want, or if the court has any other questions, I'm happy to answer them. I think quickly I would point out Marktech was a pre-Octane case that applied a different standard, vastly different facts, as we point out in our briefs,  which doesn't necessarily mean that the result was compelled. With that, if the court has no further questions, I'll thank the court for their time. Quickly to address Marktech, it was under an earlier standard of review, but it was under a higher standard of review. This was under Brooks Furniture, and so the Supreme Court recognized in Octane that Brooks Furniture was unduly restrictive, and therefore since the Marktech facts passed Brooks Furniture, they should easily pass Octane here. OSS said that it addressed the facts in their briefing as to how it distinguished the facts. At this case, it distinguished from Marktech. I respectfully disagree. I don't believe that they actually did try to distinguish. All that I saw in their briefing is that they recognized that Judge Bennett found this case not exceptional and cited Marktech, but again, just as Judge Bennett didn't delve into the parallels between a dispositive claim construction, an excluded ex report, and neither did OSS here. So I still believe that Marktech is the best poll star for the case here. I do want to be clear that FFC is not arguing that should you lose a case that you're entitled to fees. That's absolutely not our argument. Fees are justified here due to the exceptional conduct that we had outlined and the baseless nature of the case. So I just want to make sure that the panel does not misunderstand FFC as overreaching here. That is not the case. We are asking fees in this particular case for this particular conduct. It is luckily a rare case that you see something like this, and so that's why we felt that injustice was done and not awarded fees.  So this is not misbehavior. This is the decision of OSS to proceed in the face of a dispositive claim construction that rendered their case objectively baseless. Right, after the judge said, I can't rule in your favor on the claim construction, the case has to go forward. After the judge said that she didn't want to rule on the summary judgment at the time in light of a lot of... Right, but I mean, if you're correct, on your theory of the case, you were entitled to summary judgment. We were entitled to summary judgment. I'm sorry, you've heard my take on the case. The judge said, let's go on, and you said it was unreasonable to go on. Understood, Your Honor. I've made the point. I won't beat that horse any further. Regarding the standard here, again, to be clear, we do believe this is an abuse of discretion. We're not asking the court to make new law here, but there is an apparent circuit split as to, you know, when a lower standard is available, and if any case applies, it would be this one because Judge Bennett had the unenviable task of reviewing this voluminous record. This was his only decision in the case. He came in at the very end to render this decision, and so he's in no better position than the panel is today. That would apply every time that a case isn't turning exclusively on credibility or something like that. So what you're asking for would be taking what all the courts in the country have said are two really narrow cases that even those courts limit to their facts and making them, you would make them excessively broad. How many cases are you involved in where a new judge has to pinch hit at some point for some other judge? This happens all the time. What you're asking for would amount to an enormous disruption in the way the legal system works and the standards of review. It's not a welcome argument or a well-briefed one. Maybe it's even a frivolous argument. Perhaps they should file a motion. Okay, anything further? How about nothing further? Thank you. This case is taken under submission.